**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

DIAMOND CUNNINGHAM, o/b/o L.C.,           )
                                          )
        Plaintiff,                        )
                                          )
    vs.                                   )        Case No. 4:19-CV-03174 JAR
                                          )
ANDREW M. SAUL,                           )
Commissioner of Social Security,          )
                                          )
        Defendant.                        )

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

the Commissioner to terminate the Supplemental Security Income (SSI) childhood disability

benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1383, *et seq.,* of L.C., Diamond

Cunningham's daughter ("Plaintiff"). Plaintiff has filed a brief in support of the Complaint (Doc.

No. 14) and Defendant has filed a brief in support of the Answer (Doc. No. 15).

**I.      Background**

In an initial determination dated October 10, 2016, Plaintiff, a child born in August 2016,

was found disabled since September 8, 2016 based on low birth weight. (Tr. 29). In a continuing

disability review completed on January 11, 2018, the Commissioner determined that Plaintiff was

no longer disabled as of January 22, 2018 due to medical improvement. (Tr. 87-90). Plaintiff filed

a request for reconsideration on January 18, 2018. (Tr. 92-95). The reconsideration decision, issued

on May 14, 2018, affirmed the agency's prior determination that Plaintiff's disability ceased in

January 2018. (Tr. 101-12). Plaintiff then requested a hearing before an Administrative Law Judge

("ALJ") (Tr. 124-27). After a hearing on December 7, 2018, the ALJ issued a written decision on

1

April 30, 2019, determining that Plaintiff's disability ended as of January 22, 2018. (Tr. 26-39). On October 23, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.    Facts

The Court adopts Plaintiff's Statement of Uncontroverted Facts (Doc. No. 14-1) to the extent they are admitted by the Defendant (Doc. No. 15-1). The Court also adopts Defendant's Statement of Additional Facts. (Doc. No. 15-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III.    Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it sufficient to support a conclusion." Id. In evaluating the substantiality of the evidence, the Court must consider evidence which supports the ALJ's decision as well as any evidence which fairly detracts from the decision. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). Where substantial evidence supports the ALJ's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Id.; Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death

2

or which has lasted or can be expected to last for a continuous period of not less than 12 months."
42 U.S.C. § 1382c (a)(3)(C)(I).

If a child is found eligible for disability benefits, her continued eligibility must be reviewed from time to time. 20 C.F.R. § 416.994a(a). The Social Security Administration has prescribed a three-step sequential evaluation for making a periodic review of a child's eligibility for disability benefits. 20 C.F.R. § 416.994a(b). The ALJ first determines whether there has been any "medical improvement" in the child's condition since the Comparison Point Decision ("CPD"), which is the most recent favorable decision regarding benefits. 20 C.F.R. § 416.994a(b)(l). Medical improvement is defined as "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child] w[as] disabled or continued to be disabled ... based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the child's] impairment(s)." 20 C.F.R. § 416.994a(c). Generally, if there has been no medical improvement, the child continues to be disabled. 20 C.F.R. § 416.994a(b)(1).

If there has been medical improvement, however, the ALJ proceeds to the second step and considers whether the impairment or impairments previously identified and considered at the CPD still meet or equal the severity of the listed impairment they met or equaled at the time of the CPD. 20 C.F.R. § 416.994a(b)(2). If so, the ALJ must find that disability continues; if not, the ALJ proceeds to the third step.

In the third step, the ALJ considers whether the child is currently disabled under the rules for determining eligibility in initial disability claims for children. 20 C.F.R. § 416.994a(b)(3); Moore ex. rel. Moore v. Barnhart, 413 F.3d 718, 721 (8th Cir. 2005). In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process

comparable to the five-step sequential evaluation process utilized for adults is used. 20 C.F.R. §
416.924(a). If a claimant fails to meet the criteria at any step in the evaluation of disability, the
process ends and the claimant is determined to be not disabled. Goff v. Barnhart, 421 F.3d 785,
790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the child cannot be engaged in "substantial gainful activity" to qualify for benefits.
20 C.F.R. § 416.924(b). Second, the child must have a "severe impairment." 20 C.F.R. §
416.924(c). If a child's impairment is so "slight" that it causes no more than minimal functional
limitations, then the child does not have a "severe" impairment and is not disabled. Oberts ex rel.
Oberts v. Halter, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001); 20 C.F.R. § 416.924(c). If, however,
it is determined that the child's impairment is severe, the analysis moves to the second part of the
additional analysis, and the ALJ determines whether the child's impairment or combination of
impairments meets or medically equals the severity of any impairment listed in 20 CFR Part 404,
subpart P, Appendix 1. 20 C.F.R. § 416.994a(b)(3). If so, the ALJ must find that disability
continues. Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004). If not, the ALJ
proceeds to the third part of the additional analysis to determine whether the child's impairment
or combination of impairments functionally equals a listing. 20 C.F.R. § 416.994a(b)(3).

To "functionally equal the listings," the severe impairment or combination of impairments
must result in "marked" limitations in two domains of functioning or an "extreme" limitation in
one domain. 20 C.F.R. § 416.926a(a); Hudson ex. rel. Jones v. Barnhart, 345 F.3d 661, 665 (8th
Cir. 2003). The domains are "broad areas of functioning intended to capture all of what a child can
or cannot do." 20 C.F.R. § 416.926a(b)(l). The domains are: (1) acquiring and using information;
(2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and
manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §

4

416.926a(b)(l)(i)–(vi). In each domain, the regulations provide "age group descriptors" summarizing the typical functioning of children in each group. The age groups include older infants and toddlers (age 1 to attainment of age 3); preschool children (age 3 to attainment of age 6); school-age children (age 6 to attainment of age 12); and adolescents (age 12 to attainment of age 18). See, e.g., 20 C.F.R. § 416.926a(h).

In evaluating the child's functioning in each domain, the ALJ should consider "how appropriately, effectively, and independently [the child] perform[s] [her] activities compared to the performance of other children [her] age who do not have impairments." 20 C.F.R. § 416.926a(b). A limitation is "marked" when it "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A limitation is "extreme" when it "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). If the child does not have an impairment which is functionally equal in severity to a listed impairment, the ALJ will find the child is not currently disabled. 20 C.F.R. § 416.994a(b)(3)(i)–(iii); Oberts, 134 F. Supp.2d at 1082.

## IV.    Decision of the ALJ

The ALJ determined that the CPD, the most recent favorable medical decision finding Plaintiff was disabled, is the determination dated October 10, 2016. (Tr. 29). At the time of the CPD, Plaintiff had the medically determinable impairment of low birth weight due to premature birth. (Id.). This impairment was found to meet section 100.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Low birth weight in infants from birth to attainment of age 1). (Id.). The ALJ found that medical improvement occurred as of January 22, 2018 (id.), and that since that time, the impairments that Plaintiff had at the time of the CPD have neither met nor medically equaled the severity of any listing nor have they functionally equaled a listing (Tr. 30-34).

5

The ALJ further found that since January 22, 2018, Plaintiff has had the severe impairments of strabismus[1], right otitis media (ear infection), asthma, and a developmental disorder of her speech, but that none of these impairments meet or medically equals one of the listed impairments in 20 C.R.F. Part 404, Subpart P, Appendix 1. (Tr. 34-36). The ALJ determined that beginning on January 22, 2018, Plaintiff has had marked limitations in her ability to interact and relate to others, and less than marked limitations in all other domains of functioning. (Tr. 37-38). As such, the ALJ determined that Plaintiff's disability ended as of January 22, 2018, and that she has not become disabled against since that date. (Tr. 38).

## V.    Discussion

Plaintiff raises two issues on appeal. First, Plaintiff asserts that the ALJ erred by failing to assess her with "marked" limitations in the domains of acquiring and using information; attending to tasks; and moving about and manipulating objects. Plaintiff contends that marked limitations in these domains of functioning, taken together with the ALJ's finding of a marked limitation in the domain of interacting and relating to others, leads to the conclusion that Plaintiff's disability had not ended in January 2018. (Doc. No. 14 at 6-12). Second, Plaintiff asserts that remand is required based on new evidence from the Special School District submitted after the hearing which reflects Plaintiff's significant deficits in the domains of acquiring and using information; motor functioning; and attending to and completing tasks. (Id. at 12-17). The Commissioner responds that substantial evidence in the record supports the ALJ's findings that Plaintiff's limitations in

---

[1] Strabismus is a disorder in which both eyes do not line up in the same direction. Therefore, they do not look at the same object at the same time. The most common form of strabismus is known as "crossed eyes." https://medlineplus.gov/ency/article/001004.htm (last visited Jan. 19, 2021).

these domains did not rise to the marked level (Doc. No. 15 at 5-10), even if the new evidence is considered (id. at 10-11).

### A.  Marked levels of impairment

The ALJ determined that beginning on January 22, 2018, Plaintiff has not had an impairment or combination of impairments resulting in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. (Tr. 38). To determine whether a child is experiencing "marked" or "extreme" limitations in the domains, the ALJ must review all the evidence in the record and compare the child's functioning to "the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1). See also 20 C.F.R. § 416.924a(b)(5)(ii); 20 C.F.R. § 416.926a(b). The ALJ considers "the effects of structured or supportive settings," how the child functions in school, and the effects of the child's medications, if any. 20 C.F.R. § 416.926a(a)(1)-(3). Finally, in determining a child's disability, the Commissioner must consider all relevant evidence, which may include medical evidence and information from people who know the child – such as parents and teachers – and can provide evidence about her functioning. 20 C.F.R. § 416.924a(a).

At the hearing, Plaintiff's mother expressed concern that Plaintiff may have some more serious developmental delays beyond what has been documented by her doctors. She testified that Plaintiff was difficult to understand, as she could only communicate with single words; pointing and tapping; or just walking up to the thing she wanted. (Tr. 53). According to her mother, Plaintiff was clumsy; fell a lot; walked on her tiptoes; and could not undress herself. (Tr. 56, 59-60, 67). Plaintiff had tantrums, a short attention span, and would not listen to her. (Tr. 62). Plaintiff's mother also reported that Plaintiff, now two years old, was in daycare, which was going well, but that Plaintiff followed her teacher around and did not interact as much with other children. (Tr.

54). According to Plaintiff's mother, Plaintiff enjoyed looking at books and being read to, playing with toys and listening to alphabet and number songs. (Tr. 54-55). The ALJ found that while Plaintiff's impairments could reasonably be expected to produce some symptoms, her mother's statements concerning the intensity, persistence and limiting effects of those symptoms were not consistent with the evidence for the period since January 22, 2018. (Tr. 36).

The medical evidence establishes that Plaintiff has received medical care on a regular and continuing basis since her birth (see Tr. 326-1172, 1173-1194, 1216-1231, 1238-1249), and physical and speech therapy through the First Steps Early Intervention Program (Tr. 286-325, 1282-1304), and that she has clearly benefitted from the medical care and special services she has received.

Physical examination showed Plaintiff to be within normal ranges for height and weight for a child her age. (Tr. 1195-1215). Plaintiff has been diagnosed and treated for intermittent right eye esotropia, the most common form of strabismus in infants. Medical records indicate this condition is improving slowly in response to treatment, which in Plaintiff's case involves patching the left eye for an hour a day to improve the vision and attention in the right eye. No significant refractive error is noted, so prescription glasses are not required. Thus, Plaintiff's vision allows her to function properly in everyday activities. (Tr. 1320-1334). Plaintiff has also been treated for asthma and recurrent ear infections and responded appropriately to prescribed medication. (Tr. 37). A hearing evaluation conducted on March 2, 2018 indicated that Plaintiff has normal hearing sensitivity and normal responses to speech. (Tr.  1260).

In September 2018, Plaintiff was seen by a First Steps speech language pathologist. (Tr. 1300). The clinician observed that Plaintiff sometimes hits her family to get their attention, which suggests a speech impairment. (Id.). However, by Plaintiff's routine well-child examination on

8

October 4, 2018, Plaintiff's mother reported that Plaintiff was doing well and that she had no concerns. Plaintiff was able to verbalize her wants and use two- or three-word combinations, indicating that her speech developmental delay is mild. (Tr. 1312-18).

Treatment records also reflect steady progress in the development of Plaintiff's gross and fine motor skills. (Tr. 36). First Step records from January 2018 indicate that she could transition from sitting on a small stool with her feet flat on the floor to standing to reach the couch and was able to stand for three seconds while playing with a push toy. At that time, Plaintiff's mother reported that Plaintiff was drinking from a cup with a straw. (Tr. 1304). In February 2018, Plaintiff's physical therapist Patricia Howard observed that Plaintiff was able to stand with her heels down without support for 30+ seconds while swinging her arms to music and was starting to take a few steps forward before dropping to the floor. Plaintiff's mother also reported that Plaintiff was starting to use a spoon to eat and to scribble with a crayon. (Id.). In March 2018, Plaintiff was transitioning from the floor to standing without support and standing without support for 30+ seconds. She could walk 10-15 feet independently with a wide base of support and, while walking, change directions without falling. She was able to walk while holding a toy in both hands. (Tr. 1303). In April 2018, Plaintiff was walking throughout her home without support and partial toe-walking had decreased (Id.). In May 2018, Howard reported that Plaintiff walks through her home with her heels down and with bowing of her legs. She will occasionally fall but immediately return to standing. She can change directions when walking without loss of balance and can climb on and off the couch. (Tr. 1302). By June 2018, Plaintiff was throwing and kicking a ball and starting to follow simple directions like "sit down." (Id.). In July 2018, she demonstrated good protective responses following a fall and immediately returned to standing. (Tr. 1301). In August 2018,

Plaintiff's leg position had improved, with less bowing of her legs. Plaintiff was walking up and down steps with hands held using a step-over-step pattern. (Tr. 1300).

During a February 2018 well-child examination, Plaintiff's pediatrician, Denise Johnson, M.D., reported that Plaintiff, eighteen months old at the time, could sit in a small chair, carry a toy while walking, scribble spontaneously, and throw a small ball a few feet while standing, and assessed normal development for her corrected age of 15 months. (Tr. 1255). By the time of Plaintiff's 2-year-old well-child examination in October 2018, no medical concerns were reported. (Tr. 1317). Plaintiff's mother reported that Plaintiff uses a fork and spoon, solves single-piece puzzles, runs and jumps up, and undresses herself. (Tr. 1318). Dr. Johnson's physical exam of Plaintiff was normal. (Tr. 1318).

A January 2018 disability determination explanation prepared by state agency medical expert Judee Bland, M.D., reported that Plaintiff has normal growth with good interval weight gain and some developmental delay, mostly in gross motor, which was not unexpected given her premature birth. (Tr. 75-83). Dr. Bland assessed Plaintiff with less than marked limitation in the domain of moving about and manipulating objects. Similarly, a Childhood Disability Evaluation Form prepared by state agency medical expert William Busby, M.D., on April 2, 2018, assessed mild physical developmental delay with a less than marked limitation in moving and manipulating objects. (Tr. 1232-37). The ALJ properly found their assessments – to the extent they both determined that Plaintiff has less than two marked limitations in the six domains of functioning – consistent with the medical evidence, and as such, gave them significant weight. (Tr. 37). See Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) (no error in considering an agency consultant's opinion along with the medical evidence as a whole, where the opinion was consistent with the evidence).

10

With regard to the first area at issue, acquiring and using information, the Commissioner considers how well a child can acquire or learn information, and how well a child uses the information she has learned. 20 C.F.R. § 416.926a(g). For children Plaintiff's age, the Regulations provide:

> Older infants and toddlers (age 1 to attainment of age 3). At this age, you are learning about the world around you. When you play, you should learn how objects go together in different ways. You should learn that by pretending, your actions can represent real things. This helps you understand that words represent things, and that words are simply symbols or names for toys, people, places, and activities. You should refer to yourself and things around you by pointing and eventually by naming. You should form concepts and solve simple problems through purposeful experimentation (e.g., taking toys apart), imitation, constructive play (e.g., building with blocks), and pretend play activities. You should begin to respond to increasingly complex instructions and questions, and to produce an increasing number of words and grammatically correct simple sentences and questions.

20 C.F.R. § 416.926a(g)(2)(ii).

In concluding that Plaintiff has less than marked limitation in this domain, the ALJ acknowledged the concern of Plaintiff's family that some of her behavior suggests a cognitive problem, but noted that Plaintiff's doctors have not been able to diagnose any medical condition that would affect her ability to acquire and/or use information.  (Tr. 37). As detailed above, Plaintiff has been diagnosed and treated for strabismus, but her vision is adequate to allow her to function properly in everyday activities. She has normal hearing sensitivity and her asthma and ear infections have responded to medication. Plaintiff can verbalize her wants and use two- or three-word combinations. This evidence supports the ALJ's finding that any limitations in the area of acquiring and using information were less than marked.

With regard to the second area at issue, attending and completing tasks, the Commissioner considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and

the ease of changing activities. 20 C.F.R. § 416.926a(h). For children of Plaintiff's age, the regulations provide:

> Older infants and toddlers (age 1 to attainment of age 3). At this age, you should be able to attend to things that interest you and have adequate attention to complete some tasks by yourself. As a toddler, you should demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on your clothes.

20 C.F.R. § 416.926a(h)(2)(ii). Examples of limited functioning in this domain include: (1) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (2) "being slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; and (4) being easily frustrated and giving up on tasks. See 20 C.F.R. § 416.926a(h)(3)(i)-(v).

Here, the ALJ found that Plaintiff had a less than marked limitation in this domain. (Tr. 37). The ALJ again noted that Plaintiff would hit family members when she wanted something, due to frustration and not talking much (Tr. 37); however, as discussed above, Plaintiff's demonstrated ability to verbalize her wants and use two- or three-word combinations indicates her developmental delay in speech is mild.

Regarding the third area at issue, moving about and manipulating objects, the Commissioner considers how well a child can move her body from one place to another and how a child moves and manipulates objects, i.e., gross and fine motor skills. 20 C.F.R. § 416.926a(j). For children Plaintiff's age, the regulations provide:

> Older infants and toddlers (age 1 to attainment of age 3). At this age, you should begin to explore actively a wide area of your physical environment, using your body with steadily increasing control and independence from others. You should begin to walk and run without assistance, and climb with increasing skill. You should frequently try to manipulate small objects and to use your hands to do or get something that you want or need. Your improved motor skills should enable you to play with small blocks, scribble with crayons, and feed yourself.

20 C.F.R. § 416.926a(j)(2)(ii).

Here, the ALJ found that since January 22, 2018, Plaintiff has had less than marked limitation in moving about and manipulating objects. (Tr. 38). The ALJ recognized that Plaintiff was born prematurely, required medical treatment for several conditions, and participated in the First Steps Program to develop language, strength, and coordination. (Tr. 36, 1282-1304). The ALJ further noted that Plaintiff had responded well to occupational therapy. (Tr. 38). Again, substantial evidence supports the ALJ's determination.

First Step records from January 2018 through August 2018 reflect steady progress in the development of Plaintiff's gross and fine motor skills. She can walk without support with a decrease in partial toe-walking. She will occasionally fall but immediately return to standing. She can change directions when walking without loss of balance and can climb on and off the couch. She can throw and kick a ball. She uses a spoon to eat and can scribble with a crayon. None of these mild findings suggest marked limitations in moving about or manipulating objects. See SSR 16-3p ("objective evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms").

Likewise, examiners did not observe marked or extreme limitations. Indeed, by the time of Plaintiff's 2-year-old well-child examination in October 2018, no medical concerns were reported. (Tr. 1317). In addition, State agency medical experts Bland and Busby both issued reports concluding that Plaintiff has only minor deficits in functioning. (Tr. 75-83, 1232-1237).

In sum, the ALJ identified substantial evidence to support his evaluation of the functional domains, including Plaintiff's treatment records and examiners' findings.

**B.  New evidence**

In her second point on appeal, Plaintiff asserts that remand is required based on new evidence from the Special School District submitted after the ALJ's written decision. The new evidence is an individualized education program ("IEP") from the Special School District of St. Louis County prepared for Plaintiff for a period from May 2019 to May 2020 (Tr. 10-22) which Plaintiff argues reflects significant deficits in the domains of acquiring and using information; motor functioning; and attending to and completing tasks. (Doc. No. 14 at 12-17).

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 416.1470(a)(5); Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012). Here, the Appeals Council received the IEP and made it a part of the record (Tr. 5) but found that because it concerned the period of time after April 30, 2019, the date of the ALJ's decision, it did not affect the ALJ's decision. (Tr. 2).

"When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, 'we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination.'" McDade v. Astrue, 720 F.3d 994, 1000 (8th Cir. 2013) (quoting Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000)). As discussed in detail above, substantial evidence supports the ALJ's determination even if the IEP is considered. The IEP documents developmental delays, including speech and motor issues, which the ALJ has already considered. Cumulative evidence submitted to the Appeals Council "does not undermine the ALJ's RFC determination." Harvey v. Colvin, 839 F.3d 714, 717 (8th Cir. 2016) (quoting Perks, 687 F.3d at 1093). The fact that Plaintiff is receiving special services does not support her argument that she has marked – as

14

opposed to less than marked – limitations in the domains of acquiring and using information; attending and completing tasks; and moving about and manipulating objects.

      **VI.**    **Conclusion**.

      For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

      Accordingly,

      **IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

      A separate Judgment will accompany this Memorandum and Order.

Dated this 22nd day of February, 2021.

                                    _____

                                    **JOHN A. ROSS**
                                    **UNITED STATES DISTRICT JUDGE**